**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **A.B. and T.B.**

**No. 21-0190** (Greenbrier County 20-JA-04 and 20-JA-05)

## MEMORANDUM DECISION

Petitioner Mother L.L., by counsel Carrie F. DeHaven, appeals the Circuit Court of Greenbrier County's February 1, 2021, order terminating her parental rights to T.B. and A.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Michael R. Whitt, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner abused substances, exposed the children to domestic violence, and had untreated mental health issues. The DHHR's initial referral dated back to May of 2019, when law enforcement officers responded to a call concerning then eight-year-old T.B. being locked out of petitioner's house while petitioner was unresponsive. Law enforcement officers gained entry to the home and found petitioner asleep with a used syringe, a glass pipe, a half-bottle of liquor, and marijuana in her bedroom. The officers also reported that petitioner smelled of alcohol. According to the DHHR, law enforcement officers had responded to numerous calls at the residence, and, on one occasion, petitioner attacked the father when he tried to leave. In July of 2019, the DHHR began offering in-home safety services to petitioner to address her inadequate supervision of the children, substance

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

abuse, and parenting deficiencies. The following month, petitioner tested positive for methamphetamine and alcohol. In September of 2019, petitioner was arrested and incarcerated after she allegedly struck the father with a board, pointed a gun at him, and broke the windshield of his car while A.B. was inside the vehicle. A few weeks later, petitioner was released and agreed to follow through with in-home services. However, shortly thereafter, the DHHR workers and providers were unable to contact petitioner, and petitioner ceased all participation in any services. By November of 2019, a DHHR worker contacted petitioner who stated that she did not need services. The following month, the father was arrested for felony possession of marijuana with the intent to deliver. The DHHR then filed the underlying petition concluding that petitioner failed to comply with the ongoing case and had not addressed her mental health problems, substance abuse, or domestic violence issues. The DHHR further concluded that petitioner failed to pay her utility bills and mortgage, resulting in her loss of stable housing.

The circuit court held a contested adjudicatory hearing in March of 2020. The circuit court found that petitioner 1) knowingly exposed the children to domestic violence; 2) had not provided a stable home for the children since May of 2018; 3) denied having a substance abuse problem despite her positive drug screen for methamphetamine in August of 2019; 4) refused services offered by the DHHR through her in-home safety plan; 5) and denied any parenting deficiencies despite issues of domestic violence and documented failures to supervise the children.

In July of 2020, the circuit court held a dispositional hearing. Upon petitioner's admissions of untreated mental health problems, domestic violence in the home, and alcohol abuse, the circuit court granted petitioner a post-dispositional improvement period. The terms of the improvement period required petitioner to undergo a psychological and substance abuse evaluation, submit to random drug and alcohol screens, participate in adult life skills and parenting sessions, attend all multidisciplinary team ("MDT") meetings and hearings, be open and honest with MDT members, maintain contact with the DHHR, and abstain from posting confidential information about the proceedings on social media. Petitioner completed her psychological and substance abuse evaluation in September of 2020. The evaluation concluded that "given the psychotic nature of [petitioner's] mental health issues, the volatility and violence of her behaviors, her long-term substance abuse, and her refusal or failure to accept responsibility," petitioner's prognosis for improved parenting was "extremely poor." The evaluation noted that there were no services or interventions that could guarantee the safety of the children while in petitioner's care and that any contact with the children should be supervised by a professional. That same month, the MDT submitted a report that indicated that petitioner had made some progress as she had obtained partial employment and completed some coursework in parenting classes. The report also stated that petitioner was under the care of a psychiatrist and had been attending counseling sessions with a psychologist to address her mental health issues. In November of 2020, petitioner was arrested and briefly incarcerated for an outstanding criminal capias regarding an alleged theft that occurred in 2019.

The circuit court held final dispositional hearings in December of 2020 and January of 2021. At the December hearing, Barbara Nelson, the forensic psychologist who evaluated petitioner, testified that she diagnosed petitioner with stimulant use disorder, alcohol use disorder, and unspecified schizophrenic spectrum. Ms. Nelson opined that petitioner had exposed the children to volatile and erratic behaviors. She was unsure whether petitioner's mental illnesses

were genetic or induced by the use of alcohol and drugs. Ms. Nelson stated that petitioner denied all wrongdoing, failed to take any responsibility for the allegations that led to the petition, and "blamed everything on others." Ms. Nelson also stated that she had a concern of petitioner retaliating against T.B. because law enforcement came to her house when he was locked outside, which lead to the opening of the case. She also stated that petitioner lacked a bond with T.B. and made negative comments about him. According to Ms. Nelson, petitioner's prognosis for obtaining minimally adequate parenting was "extremely poor" and there were no services that could be offered to petitioner to ensure the safety of the children. In her opinion, the children would be placed at significant risk of abuse and neglect in the care of petitioner.

At the January of 2021 hearing, a service provider testified that petitioner had been largely noncompliant with drug screening as she had submitted to only eleven of forty-one required drug screens since May of 2020. Another service provider testified that she was assigned to provide parenting and adult life skills sessions to petitioner from August to November of 2020. During that time, petitioner attended ten out of approximately sixteen scheduled sessions. The provider stated that petitioner had completely failed to internalize any of the curriculum as she failed to take any responsibility for her actions and continuously complained about the initial incident that led to the DHHR's opening of the case. The provider explained that petitioner supplied seven different phone numbers and several email addresses, and the provider had to contact each one to attempt to locate petitioner. She also stated that petitioner lacked consistent employment and stable housing, but petitioner had moved in with a friend in October of 2020. A third service provider testified that she was assigned to provide parenting and adult life skills sessions to petitioner in November of 2020, but petitioner failed to stay in contact with her, resulting in petitioner's failure to participate in these services. She stated that she attempted to schedule two sessions but on one occasion petitioner provided the wrong address and on the other occasion, petitioner overslept. Finally, the DHHR worker testified that petitioner tested positive for high amounts of alcohol on August 3, 2020, and amphetamine on August 12, 2020; September 2, 2020; October 26, 2020; and November 2, 2020. Petitioner also tested positive for methamphetamine on November 2, 2020; amphetamine, benzodiazepines, and opiates on December 12, 2020; and opiates and amphetamine on January 4, 2021. The worker stated that petitioner did not have a prescription for any of the substances. In the worker's opinion, petitioner had not adequately addressed her mental health and substance abuse issues. The worker also stated that petitioner's inconsistent supervised visitations negatively impacted the children, and the visits were suspended in June of 2020.

Petitioner testified that she was currently in treatment for her mental health issues with both a psychiatrist and a psychologist. However, petitioner presented no additional testimony or documentation to confirm details of her alleged treatment or any medications which she was prescribed. Petitioner testified that she had stable housing with a roommate and that she earned income by cleaning houses and caregiving for an elderly gentleman. Petitioner stated that she had difficulty staying in touch with the DHHR worker and providers because of her work schedule and losing cell phones. Petitioner denied having any delusions and denied breaking the father's windshield. On cross-examination, petitioner conceded that she last saw the children in June of 2020, and her supervised visits were suspended due to her failure to consistently appear on time and missing visits. Petitioner also admitted that she failed to provide a calendar with proof of worked performed and incomed earned to the DHHR worker. Petitioner also wavered when questioned about whether her alcohol abuse constituted abuse and neglect of the children.

Petitioner stated, "I didn't neglect their wellbeing by being drunk around them" and also denied drinking alcohol if she were the only adult around the children. Regarding petitioner's positive drug screens for various substances, she explained that she sought out Percocet, an opiate, illegally and the pills must have contained methamphetamine and other drugs. Petitioner further minimized her abuse and neglect of the children by answering, "[s]ome people are abusive physically and verbally and emotionally when they're intoxicated. And I don't do that."

At the close of evidence, the circuit court found that petitioner submitted to only eleven of forty-one drug screens, and that she tested positive for methamphetamine, amphetamine, benzodiazepines, and opiates throughout the proceedings. The court noted that petitioner tested positive for opiates and amphetamine as recently as January 4, 2021. The court found that petitioner last participated in a parenting class in November of 2020 and failed to internalize the skills and knowledge learned during the few sessions she attended. The court found that petitioner remained inconsistent with addressing mental health treatment and had failed to obtain adequate stable housing or proof of adequate income. The court concluded that petitioner had demonstrated an unwillingness and inability to comply with services to obtain minimally adequate parenting and that petitioner had refused to respond to the case plan. The circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights. The court considered all dispositional alternatives when deciding to terminate petitioner's parental rights. The circuit court's February 1, 2021, dispositional order reflected this termination.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. According to petitioner, she made some improvements during her post-dispositional improvement period, and such improvements warranted a "less drastic alternative than the termination of her

---

[2]The father successfully completed an improvement period, and the petition against him was dismissed. The children were reunified with the father.

4

parental rights." Petitioner contends that West Virginia Code § 49-4-604(c)(4) should have been employed, as it provides that a circuit court may "[o]rder terms of supervision calculated to assist the child and any abusing parent or battered parent or parents or custodian which prescribe the manner of supervision and care of the child and which are within the ability of any parent or parents or custodian to perform." As the children were reunified with the father, the court should have employed the less-restrictive dispositional alternative of requiring supervision of petitioner rather than terminating her parental rights. Upon our review, we find no error in the circuit court's disposition.

According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to respond to a reasonable family case plan. She failed to maintain sobriety as she abused amphetamine and opiates as late as January of 2021—a few weeks before the January of 2021 dispositional hearing. She further admitted to obtaining prescription drugs illegally and missing drug screens, which were counted as positive drug screens. Although petitioner exercised supervised visitations, her visits were ultimately suspended due to her missing visits or appearing late. Her inconsistent visitations were ultimately detrimental to the children. The circuit court noted that petitioner had allegedly gained mental health treatment but failed to support her testimony with that of any healthcare provider or documentation to show details of her diagnosis and treatment. Although petitioner had gained partial employment, the evidence presented showed that petitioner could not produce consistent dates of work performed or income earned to the DHHR. Additionally, the DHHR presented evidence that petitioner attended some parenting and adult life skills classes but failed to internalize the information and instead blamed others for her shortfalls and the initiation of the case. Most importantly, the evidence, including portions of petitioner's testimony at the dispositional hearing, showed that petitioner did not fully acknowledge the conditions of abuse and neglect. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Thus, the circuit court did not err in concluding that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse in the near future. Indeed, in her brief, petitioner

concedes that "the facts as presented in the appendix . . . do not support a finding that the conditions that led to the filing of the petition had been adequately corrected."

Regarding petitioner's argument that her parental rights should have remained intact since the children were reunified with the father, we have previously held that "simply because one parent has been found to be a fit and proper caretaker for [the] child[ren] does not automatically entitle the child[ren]'s other parent to retain his/her parental rights if his/her conduct has endangered the child[ren] and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). As such, petitioner cannot establish that termination of her rights was inappropriate simply because the children remained with the father. On the contrary, the record contains extensive evidence that termination of petitioner's parental rights was necessary for the children's welfare, especially in light of testimony from the psychologist who evaluated petitioner and concluded that petitioner had no bond with T.B., made derogatory comments about the child, and was a high risk to retaliate against the child should he be returned to her care. Based on this evidence, it is clear that petitioner was not entitled to a less-restrictive alternative disposition. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 1, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6